# IN THE COURT OF APPEALS OF IOWA

No. 21-0186
Filed November 3, 2021

IN RE THE MARRIAGE OF MICHELLE YVONNE BAKER
AND TABORA ALINGA BAKER, SR.

Upon the Petition of
MICHELLE YVONNE BAKER,
        Petitioner-Appellee,

And Concerning
TABORA ALINGA BAKER, SR.,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer,

Judge.


        Tabora Baker appeals the ruling on competing petitions to modify the

decree dissolving his marriage to Michelle Baker.  **AFFIRMED.**


        John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

        Jacquelyn Johnson, Sioux City, for appellee.


        Considered by Mullins, P.J., and May and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Tabora Baker appeals the ruling on competing petitions to modify the decree dissolving his marriage to Michelle Baker. He argues the court erred in modifying the decree to only allow him supervised visitation.

## I.     Background

The parties' marriage—which produced two children, born in 2007 and 2012—was dissolved by stipulated decree in 2017. The decree awarded the parties joint legal custody with physical care to Michelle and visitation to Tabora, encompassing evenings Monday through Thursday from 4:00 p.m. to 7:00 p.m. during the school year; Monday through Thursday from 3:00 p.m. to 8:00 p.m. during the summer months; weekend visitation as the parties may agree, which would displace two weekday evening visits; and alternating holidays.

No weekend visitation ever really occurred thereafter. In September 2019, Tabora filed a petition to modify the visitation provisions of the decree, requesting the establishment of a specific weekend visitation schedule, that he be allowed phone calls with the children, and that the visitation schedule provide flexibility with regard to his work schedule. Michelle filed a counterclaim, requesting Tabora's visits be supervised. In May 2020, Michelle filed her own modification petition, requesting she be awarded sole legal custody and Tabora's visits be supervised.

A trial was held in December. The trial record discloses the following pertinent facts. Tabora has a history of physical violence against Michelle in the presence of the children. Both children have serious mental and aggressive behavioral issues and are on antidepressants and mood stabilizers. The older child has also recently experienced suicidal ideations and engaged in self harm.

Both children see a therapist. Tabora is against medicating his children or getting them therapeutic help for their mental and behavioral issues.

At trial, Michelle testified her desire that Tabora's visits be supervised is based on the facts that he allows the children to be around individuals with criminal histories and that he allows the older child to have a cell phone, which the child has used to facilitate inappropriate relationships with older men on social media. There was also an incident in July 2020 involving Tabora spanking the younger child with a belt. Although the Iowa Department of Human Services concluded it was an isolated incident, the evidence suggests this was not the only act of physical aggression against the child by Tabora. On another occasion, the older child returned from a visit with her father with a marijuana vape pen in her possession. In her report, the children's therapist noted her concern for allowing continuing unsupervised visits between Tabora and the children based on his refusal to discontinue making derogatory remarks about Michelle in front of the children—which results in emotional and mental trauma for the children—and his unwillingness to take action to address, or even identify, the children's mental, emotional, and behavioral issues.

Following trial, the court modified the decree to place the children in Michelle's sole legal custody, highlighting as substantial and material changes in circumstances the uptick in the children's mental and behavioral issues, Tabora's unwillingness to identify or administer to the same, his ongoing inability to restrain his anger (even in the courtroom during trial), and the children's fear of Tabora. The court found continuing unsupervised visitation between Tabora and the children would result in further physical and emotional harm to the children and

was therefore contrary to their best interests. So the court ordered visitations be supervised by a certified agency at times agreed between the parties or every Monday from 4:00 p.m. to 7:00 p.m. and every other weekend from 4:00 p.m. to 7:00 p.m. on Friday, Saturday, and Sunday. The court also ordered Tabora to be allowed a reasonable amount of telephone or electronic contact with the children.

Tabora appeals, only challenging the court's decision to require his visitation be supervised.

## II. Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). The best interests of the children is our primary consideration. Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

## III. Analysis

A party seeking modification of the visitation provisions of a dissolution decree "must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App.1994). "[A] much less extensive change in circumstances is generally required in visitation cases" than the change necessary to modify child custody. *Id.* at 96. "The rationale for this lower standard is found

in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Id.*

Tabora argues the court's conclusion that unsupervised visitation would be contrary to the children's physical and emotional wellbeing was not supported by sufficient evidence. He claims the act of him spanking one of the children with a belt was not sufficient, he is not the cause of his children's issues, and his lack of support for the children's treatment does not create a risk of harm. Upon our review, we disagree. In our view, the way Tabora parents the children while in his care is the driving factor behind the children's mental and emotional trauma and their acting out aggressively. He involves the children in adult issues and makes derogatory statements about their mother. The children's mental and emotional health demands treatment, as evidenced by both children's aggression toward each other and others, as well as the older child's suicidal ideations and acts of self-harm. While liberal visitation rights are in a child's best interests, visitation may be restricted if it poses direct physical or significant emotional harm. *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994). We agree the changes cited by the district court are sufficient for modification of visitation and disallowing Tabora unsupervised visitation for the time being[1] is in the children's best interests as posing physical and emotional harms. We affirm.

**AFFIRMED.**

---

[1] Tabora should heed the children's therapist's recommendation that he obtain treatment to address his anger issues and complete a parenting class. He may also want to re-up on issues regarding putting children in the middle of divorced parents. If he changes his ways, he may have a basis for pursuing a modification of visitation back to unsupervised.